MAINE SUPREME JUDICIAL COURT Reporter of Decisions
Decision: 2026 ME 60
Docket: Han-25-136
Submitted
 On Briefs: April 22, 2026
Decided: July 14, 2026

Panel: STANFILL, C.J., and MEAD, LAWRENCE, DOUGLAS, JJ., and HORTON, A.R.J.


IN RE CHILDREN OF JOHNATHAN R.


MEAD, J.

[¶1]  Johnathan R. appeals from an order of the District Court (Ellsworth, *Harrigan, J.*) finding that he has placed his children in circumstances of jeopardy to their health and welfare.[1]  He contends that the trial court's factual findings are insufficient to permit a conclusion that he has placed his children in jeopardy as a result of serious abuse or neglect.[2]  *See* 22 M.R.S. §§ 4002(6), 4035(2) (2026).  We affirm the jeopardy order.

---

[1]  The children's mother consented to the entry of a jeopardy order and has not appealed.

[2]  The father also argues that, because the jeopardy order was issued 271 days after the initial petition was filed and was thus outside the statutory deadline of 120 days, *see* 22 M.R.S. § 4035(4-A) (2026), we should issue "an order of prompt action on trial courts where delay occurs to such a[] degree."  Because such relief is unavailable in this context, *cf. In re child of Cassie S.*, 2026 ME 26, ¶ 26, 354 A.3d 1099 (holding that a violation of the 120-day deadline does not require dismissal of the jeopardy order because the statute does not provide such a remedy), we decline to address it further except to note that the delay between the filing of the petition and the issuance of the jeopardy order is inordinate.  Although reasons may exist that could cast light on the timelines, we are unable to ascertain any particular reason or necessity in the record justifying the degree of delay allowed in this matter.

2

## I. BACKGROUND

[¶2]  The following facts are drawn from the procedural record and the court's findings, which are supported by competent record evidence.  *See In re Child of Jasmine B.*, 2020 ME 62, ¶ 5, 232 A.3d 240.

[¶3]  Johnathan R. is the father of two children, who are twelve and nine years old.  On May 29, 2024, the Department became involved with the family following reports that the youngest child had expressed to school personnel that the child felt unsafe at home due to the father's aggressive and erratic behavior.  The parents and the Department established a voluntary safety plan, placing the children with a resource family.  On June 6, 2024, the Department filed a petition for a child protection order and a request for a preliminary protection order after the father threatened to violate the safety plan because of an issue he had with the resource parents.  That same day, the court (*Roberts, J.*) entered a preliminary protection order, placing the children in the custody of the Department.

[¶4]  On July 3, 2024, the court (*Harrigan, J.*) held a contested summary preliminary hearing as to both parents.  The court concluded that returning the children to their parents would place them at risk of immediate harm.

[¶5]  On February 26, 2025, the court conducted a contested jeopardy hearing.  At the hearing, the court heard testimony from the father and a Department caseworker.  At the close of the hearing, the court orally ruled that jeopardy had been established and that it was "[t]oo early to return the kids." On March 4, 2025, the court issued its jeopardy order and made the following findings of fact.

[¶6]  The father has struggled with substance misuse, having tested positive for alcohol in August and September 2024, cocaine metabolites in January 2025, and both cocaine and alcohol again later in January 2025.  While the father claims to have achieved sobriety,[3] his participation in drug and alcohol screening was inconsistent, having missed many screens, and he failed to cooperate with the Department's initial efforts to engage him in inpatient programs to treat substance use disorder.  The father was eventually admitted to a detox facility, and upon discharge, he was directed to engage with a recovery center to treat substance misuse and to continue seeing a substance misuse counselor.  He engaged minimally with the recovery center, and refused to provide the Department with the names of any medical providers treating him for his substance use disorder and mental health issues.

---

[3] The father argued that the positive drug tests were false positives.

4

[¶7] The father has engaged in "some services,"[4] but because of his refusal to provide signed releases or names, the Department was unable to verify, and the court did not find credible, his statements that he has been receiving mental health and substance misuse treatments.

[¶8] In addition to his issues of substance misuse, the father is very combative and aggressive towards his children, their mother, and Department personnel. While the record does not indicate that the children have been physically harmed by their father, it does demonstrate that the youngest child is extremely distressed and deeply affected by the father's behavior. The court noted, in its only findings relating directly to the children, that

> [t]he children have expressed some fear of their father, [the younger child] more so than [the older child]. Indeed, [the younger child] is fearful of men (so much that the Department, upon learning about this, is trying to find [the child] a female counselor) and prefers Zoom visits with [the] father, to in person visits.

The court further noted the father's utter lack of insight into the causes of his children's fear and his inability to empathize with his children.

[¶9] Ultimately, the court based its finding of jeopardy as to the father on his continuing substance misuse, his untreated mental health issues, his

---

[4] Specifically, the court found: "While the parties seem to agree that [the father] underwent a screening for the certified batterer's intervention program and it was determined he did not need those services, that is where the agreements end."

combative and aggressive behavior toward his family, the Department, and the court, the emotional effect his behaviors had on the children, and his "lack of insight and ability to empathize with his [children]." The father timely appealed. *See* 22 M.R.S. § 4006 (2026); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10] In a child protection proceeding, a court must determine, by a preponderance of the evidence, "whether [a] child is in circumstances of jeopardy to the child's health or welfare." 22 M.R.S. § 4035(2). We review a court's factual findings for clear error and "will affirm the decision unless there is no competent record evidence that can rationally be understood to establish as more likely than not that the child[ren were] in circumstances of jeopardy to [their] health and welfare." *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (quotation marks omitted).

[¶11] Jeopardy is defined as "serious abuse or neglect, as evidenced by," inter alia, "[s]erious harm or threat of serious harm." 22 M.R.S. § 4002(6)(A). As relevant here, "serious harm" is defined as either "[s]erious injury" or "[s]erious mental or emotional injury or impairment which now or in the future is likely to be evidenced" by serious mental health or behavioral issues, including severe anxiety. *Id.* § 4002(10)(A)-(B). "'Serious injury' means serious

physical injury or impairment." *Id.* § 4002(11). For serious mental or emotional injury, "the Legislature has required . . . that, now or in the future, [the injury] is likely to be evidenced by serious mental, behavioral or personality disorder." *In re Jazmine L.*, 2004 ME 125, ¶ 15, 861 A.2d 1277 (emphasis and quotation marks omitted).

[¶12] Here, the facts that the court found accurately reflect the extent of evidence offered by the Department pursuant to its assertion that the children were in jeopardy due to "serious harm or threat of serious harm." The father may dispute the veracity of the testimony surrounding his youngest child's fear of him, but we defer to the trial court's assessment of the "weight and credibility of the evidence." *In re Child of Dawn B.*, 2019 ME 93, ¶ 10, 210 A.3d 169. While the statutory definitions of "serious harm" and "serious mental or emotional injury or impairment" set rigorous standards at the jeopardy stage of a child protective proceeding, *see supra* ¶ 11, the Department need establish jeopardy only by a preponderance of the evidence, *see* 22 M.R.S. § 4035(2), which is markedly lower than the clear-and-convincing evidence standard that is required at a proceeding for termination of parental rights, *see* 22 M.R.S. § 4055(1)(B)(2) (2026). And, because the father did not move for further findings of fact pursuant to M.R. Civ. P. 52(b), "we assume that the court

implicitly made all findings consistent with the evidence that are necessary to support the judgment."[5] *In re Children of Quincy A.*, 2023 ME 49, ¶ 17, 300 A.3d 832 (quotation marks omitted).

[¶13] The trial court was required to find, "as a matter of fact, that *it was more likely than not* that [the children] would incur serious harm, or be subject to a threat of serious harm, if [they were] returned to the custody of [their] parents." *In re Dorothy V.*, 2001 ME 97, ¶ 8, 774 A.2d 1118 (emphasis added). The court's implicit and extensive express findings regarding the father's combative and aggressive behaviors, substance misuse, actions in the presence of his children, and utter lack of insight into the resulting effects on his children, are sufficient to support the court's finding that the children would be in circumstances of jeopardy if they were returned to their father's care.

The entry is:

> Judgment affirmed.

---

[5] While the court expressly referenced only the younger child's fear of the father, the nature of the father's behaviors provides ample support for an inference that the older child was likewise affected. We have previously stated that "[a] court may rely on a parent's behavior with respect to one child in assessing whether another child in the parent's care also faces jeopardy." *In re Adrian D.*, 2004 ME 144, ¶ 12, 861 A.2d 1286.

8

Katelyn Saner, Esq., Saner & Brown PLLC, Portland, for appellant Father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Ellsworth District Court docket number PC-2024-20
FOR CLERK REFERENCE ONLY